UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JASON CANO,                                )
                                           )
            Plaintiff,                     )
                                           )          CIVIL ACTION NO.
VS.                                        )
                                           )          3:20-CV-3501-G
ASSURED AUTO GROUP, SUNPATH,               )
LTD., and NORTHCOAST WARRANTY              )
SERVICES, INC.,                            )
                                           )
            Defendants.                    )

## MEMORANDUM OPINION AND ORDER

Before the court are the Rule 12(b)(1) motions to dismiss for lack of subject

matter jurisdiction of all defendants, Rule 12(b)(6) motions to dismiss for failure to

state a claim of all defendants, and the Rule 12(b)(2) motions to dismiss for lack of

personal jurisdiction of defendants SunPath, Ltd. ("SunPath") and Northcoast

Warranty Services, Inc. ("Northcoast").  For the reasons set forth herein, the

defendants's jurisdictional motions are denied and the court defers consideration of

the Rule 12(b)(6) motions.

-1-

I.  BACKGROUND

A.  Factual Background

The plaintiff, Jason Cano ("Cano"), alleges that in or around January of 2020, he began receiving calls on his cellular phone from the defendant Assured Auto Group ("AAG") attempting to sell him an automobile warranty provided by SunPath. *See* Amended Complaint ("Complaint") (docket entry 13) at 2-3.  Cano was registered on the Do Not Call Registry during this time and he "never sought information about a motor vehicle warranty and did not consent to the calls from AAG."  *Id*. at 3.  Cano further alleges that the calls were made for "telemarketing purposes" rather than "emergency purposes."  *Id*.

Whenever Cano would answer these calls, he "heard either a lengthy pause or delay before anyone came on the line."  *Id*.  Cano believes this indicates that the calls were made using an automatic telephone dialing system ("ATDS").  See *id*. at 2-3. On occasions where Cano spoke with a live individual, that person attempted to sell him a SunPath warranty.  See *id*. at 3.

On February 24, 2020, Cano provided AAG with his credit card number to make a down payment on a SunPath warranty "in order to ascertain who was responsible for the calls."  *Id*.  Immediately thereafter, his credit card was charged $145.00 by AAG.  See *id*.  Cano was subsequently sent a "contract booklet

containing information about the SunPath warranty" on April 24, 2020.[1]  *Id*.  The contract booklet identifies AAG as the "Seller/Dealer/Vendor," Northcoast as the "Provider/Obligor," and SunPath as the "Administrator."  See *id*. at 4.

The complaint goes on to allege, upon information and belief, that AAG was acting as an authorized agent of SunPath and Northcoast to enter into contracts on their behalf.  See *id*.  Lastly, Cano alleges that none of the defendants are registered as telephone solicitors with the Texas Secretary of State.  See *id*.

### B.  Procedural Background

Cano filed this suit on November 30, 2020.  He filed an amended complaint on March 23, 2021, alleging violations of the Telephone Consumer Protection Act ("TCPA") and Section 302.101 of the Texas Business and Commerce Code.  See *id*. at 4-8.  All three defendants filed their respective motions to dismiss on April 6, 2021.  *See* Defendant, Northcoast Warranty Services, Inc.'s, Motion to Dismiss Plaintiff, Jason Cano's, Amended Complaint ("Northcoast's Motion") (docket entry 14); Defendant, Assured Auto Group's, Motion to Dismiss Plaintiff, Jason Cano's, Amended Complaint ("AAG's Motion") (docket entry 15); Defendant, SunPath, Ltd's, Motion to Dismiss Plaintiff, Jason Cano's, Amended Complaint ("SunPath's Motion") (docket entry 16).  Cano responded on May 11, 2021.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss Plaintiff's

---

[1]      The booklet was attached to the complaint as Exhibit B.

-3-

Amended Complaint ("Response") (docket entry 19).  The defendants replied on

May 25, 2021.  *See* Defendants, Assured Auto Group, SunPath, Ltd., and Northcoast

Warranty Services, Inc.'s, Reply in Support of their Respective Motions to Dismiss

Plaintiff, Jason Cano's, Amended Complaint ("Reply") (docket entry 20).  The

motions are therefore fully briefed and ripe for decision.

II.   ANALYSIS

A.   Legal Standards

1.   *Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Federal courts are courts of limited jurisdiction.  See *Kokkonen v. Guardian Life*

*Insurance Co. of America*, 511 U.S. 375, 377 (1994)*; Owen Equipment and Erection Co. v.*

*Kroger*, 437 U.S. 365, 374 (1978).  A federal court may exercise jurisdiction over

cases only as expressly provided by the Constitution and laws of the United States.

See U.S. CONST. art. III §§ 1-2; see also *Kokkonen*, 511 U.S. at 377.  Federal law gives

the federal district courts original jurisdiction over "all civil actions arising under the

Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A party

seeking relief in a federal district court bears the burden of establishing the subject

matter jurisdiction of that court.  *United States v. Hays*, 515 U.S. 737, 743 (1995);

*McNutt v. General Motors Acceptance Corporation of Indiana*, 298 U.S. 178, 189 (1936);

*Langley v. Jackson State University*, 14 F.3d 1070, 1073 (5th Cir.), *cert. denied*, 513 U.S.

811 (1994).

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. See FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgras AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted).

On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir.1990) (citing *Williamson*, 645 F.2d at 413). The court's lack of subject matter jurisdiction may be asserted at any time, either in the answer, or in the form

-5-

of a suggestion to the court prior to final judgment.  5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d. ed. 2004).  A Rule 12(b)(1) motion must be made prior to service of the responsive pleading.  *Id*. An untimely Rule 12(b)(1) motion will be treated as a suggestion that the court lacks jurisdiction.  *Id*.  Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  FED. R. CIV. P. 12(h)(3).

## 2.  *Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction*

### a.  *The Factual Standard: Prima Facie Case*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making its determination, the court may consider affidavits, interrogatories, depositions, oral

testimony, or any combination of recognized discovery methods. *Allred v. Moore &
Peterson*, 117 F.3d 278, 281 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998);
*Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985). The
court is not required to accept as true conclusory allegations, even if uncontroverted,
in its prima-facie-case analysis. *Panda Brandywine Corporation v. Potomac Electric Power
Company*, 253 F.3d 865, 869 (5th Cir. 2001).

b. *Legal Requirements*

A federal district court may exercise personal jurisdiction over a nonresident
defendant if (1) the long-arm statute of the forum state permits the exercise of
personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by
the forum state is consistent with due process under the United States Constitution.
*Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the
personal jurisdiction of a federal court sitting in diversity to the same extent that it
would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore
v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court
must first determine whether Texas, the forum state, could assert long-arm
jurisdiction. *Id*. Because the Texas long-arm statute confers jurisdiction to the limits
of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*,
197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v.
Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on*

*other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041, *et seq.* (Texas long-arm statute).

### c. *Due Process Requirements*

Due process requires the satisfaction of three elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; (2) the claim must arise out of or be related to those activities; and (3) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, 548 U.S. 904 (2006); see also *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its

laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84, 93-94 (1978)); *Hanson*, 357 U.S. at 253. In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on the defendant's presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). A

-9-

defendant's contacts with the forum that are unrelated to the underlying controversy cannot support a finding of specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, __ U.S. __, 137 S. Ct. 1773, 1781 (2017) ("[a] corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011)). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "so continuous and systematic as to render [the nonresident] essentially at home in the forum [s]tate." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations and citations omitted).

Under either a specific or general jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource,*

*Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry: "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

### 3. *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to

relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The

court, drawing on its judicial experience and common sense, must undertake the

"context-specific task" of determining whether the plaintiff's allegations "nudge" his

claims against the defendant "across the line from conceivable to plausible." See *id.*

at 679, 683.

### B. Application

#### 1. *Subject-Matter Jurisdiction*

The defendants' subject-matter jurisdiction argument can be summarized as

follows: a recent Supreme Court decision, *Barr v. American Association of Political*

*Consultants, Inc.*[2] ("*AAPC*"), held that Section 227(b)(1)(A)(iii) of the TCPA was an

unconstitutional content-based restriction on speech during the five-year period when

it contained what has been called the "government-debt exception." See *AAPC*, 140

S. Ct. at 2347. As a remedy, the Court severed the government-debt exception,

leaving the remainder of Section 227(b)(1)(A)(iii) intact. See *id.* at 2356. The calls

Cano complains about occurred prior to the *AAPC* decision. Because the statute was

unconstitutional during the time that the calls were received, and because "an

---

[2]        ___ U.S. ___, 140 S. Ct. 2335 (2020).

unconstitutional law is void and is as no law,"[3] the court lacks subject matter jurisdiction.  *See* SunPath's Motion at 6-7; Northcoast's Motion at 6-7; AAG's Motion at 4-6 ("Due to the timeframe in which the alleged calls were made, Cano's claims are constitutionally barred under the holding[] of [*AAPC*]").

The defendants also cite a few recent district court rulings which held that Section 227(b)(1)(A)(iii) was inoperative with the government-debt exception and therefore the courts lacked subject-matter jurisdiction.  See *id*.[4] ("In other words, during that stretch of time, § 227(b)(1)(A)(iii) had no legal effect.  Seeing as the § 227(b)(1)(A)(iii) violations [Plaintiff] alleges occurred during this time period, these statutory offenses are not constitutionally sound–and are therefore inoperative. Considering that the federal question forming the basis of the Court's subject matter jurisdiction is no longer present . . . the Court must dismiss this case for lack of subject matter jurisdiction.") (quoting *Cunningham v. Matrix Financial Services, LLC*, No. 4:19-CV-0896-ALM-CAN, 2021 WL 1226618, at *11 (E.D. Tex. Mar. 31, 2021)).  With due respect to those courts that have found otherwise, the court disagrees with the defendants' argument, and concludes that it does have subject-matter jurisdiction over Cano's claims.

---

[3]        *Montgomery v. Louisiana*, 577 U.S. 190, 204 (2016).

[4]        *Creasy v. Charter Communications, Inc.*, 489 F.Supp.3d 499 (E.D. La. 2020); *Lindenbaum v. Realgy, LLC*, 497 F.Supp.3d 290 (N.D. Ohio 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 506 F.Supp.3d 1242 (M.D. Fla. 2020).

Federal courts have the power "to say what the law *is*." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added). "A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994). "[W]hen [the Supreme Court] construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Id*. at 313 n.12. "[A]fter [the Supreme Court has] decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review." *Griffith v. Kentucky*, 479 U.S. 314, 322-23 (1987). That is the "judicial Power . . . ." U.S. Constitution Article III § 1. Anything else would "not [be] adjudication but in effect . . . legislation." *Griffith*, 479 U.S. at 323 (quoting *Mackey v. United States*, 401 U.S. 667, 679 (1971) (Harlan, J., concurring in the judgment)).

The question now before the court is how this principle applies in a severance decision like *AAPC*? "When a court finds a law unconstitutional, it finds that it is 'void, and is as no law' from the day it is passed . . . It never took effect as written. Often, the court must then decide what *did* take effect . . . The severance analysis answers it, telling us what the law has meant from the start." *Franklin v. Navient, Inc.*, No. 1:17-CV-1640-SB, 2021 WL 1535575, at *2 (D. Del. Apr. 19, 2021) (internal citations omitted) (emphasis in original).

-15-

On the one hand, there are cases like *United States v. Jackson*.[5]  There, the

Supreme Court severed a death penalty clause from a federal kidnapping statute.  See

*id.* at 586.  Doing so did not, however, invalidate convictions under the statute

obtained prior to 1968.  See e.g., *Wilson v. United States*, 398 F.2d 331 (5th Cir.

1968), *cert. denied*, 393 U.S. 1069 (1969).  In other words, those provisions of the

statute inoffensive to the constitution remained in operation, both prospectively and

retroactively.  The severance analysis "[told] us what the law . . . meant from the

start." *Franklin*, 2021 WL 1535575, at *2.

The defendants' argument suggests that *AAPC* is different.  One possible

reason for this distinction, according to the defendants, is "the instant action is based

on alleged violations of the automated-call ban prior to July 6, 2020, a period of time

during which SCOTUS in *AAPC* determined that this ban was unconstitutional (and

prior to SCOTUS' 'cure' of the constitutional infirmity through severance . . .)."

SunPath's Motion at 6; Northcoast's Motion at 6-7.  The defendants also suggest

that the court should simply concur with the reasoning from *Cunningham* and *Creasy*.

*See* SunPath's Motion at 5-6; Northcoast's Motion at 5-6.

The first argument is an incorrect statement of what the Supreme Court did in

*AAPC*.  The Court did not *cure* anything.  It found that the government-debt

exception "'is not law' at all," because "[t]he Court's authority on this front 'amounts

---

[5]        390 U.S. 570 (1968).

-16-

to little more than the negative power to disregard an unconstitutional enactment.'"
*AAPC*, 140 S. Ct. at 2351 n.8 (quoting *Marbury*, 5 U.S. at 177; *Massachusetts v.
Mellon*, 262 U.S. 447, 488 (1923)).  Thus, there was nothing for the Court to cure
because the exception was never law.  "Congress's ideal version of the Act [with the
government-debt exception] was void from the start.  It never became law . . .
Because the Constitution trumps the Act, the Act never had a valid exception."
*Franklin*, 2021 WL 1535575, at *3.  The defendants' position would turn this
analysis on its head.  It would re-make the government-debt exception into an
existing–but unconstitutional–provision until the Court re-wrote the statute to excise
it.  This, however, aggrandizes the power of the federal courts beyond what the
Constitution permits.  Cf. *Ayotte v. Planned Parenthood of Northern New England*, 546
U.S. 320, 329 (2006) (the Court must "restrain[] [itself] from 'rewrit[ing] [a statute]
to conform it to constitutional requirements' even as we strive to salvage it.")
(quoting *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 397 (1988)).
The court thus declines to adopt this reasoning.

     The *Cunningham* and *Creasy* decisions commit largely the same error.
"However, in the years in which § 227(b)(1)(A)(iii) permitted robocalls of one
category of content (government-debt collection) while prohibiting robocalls of all
other categories of content, the entirety of the provision was, indeed,
unconstitutional."  *Creasy*, 489 F.Supp.3d at 503.  This line of logic necessarily

-17-

means that the government-debt exception was in force until excised by the Supreme Court. But again, that is not what the Court did. "As Justice Kavanaugh put it, the exception was 'not law at all.'" *Franklin*, 2021 WL 1535575, at *3 (quoting *AAPC*, 140 S. Ct. at 2351 n.8).

This is not meant to downplay the analytical quandary left in the wake of *AAPC*'s severance analysis. The plurality opinion itself appears mired in a contradiction. Cases addressing this issue coalesce around footnote twelve of the opinion.

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate . . . On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

*AAPC*, 140 S. Ct. at 2355 n.12. As the previous cases, including *Cunningham* and *Creasy*, have noted, these two propositions cannot simultaneously be true.[6] See *Creasy*, 489 F.Supp.3d at 503 ("This, of course, places the Court in an uncomfortable

---

[6]      That is, they cannot simultaneously be true as a matter of severance doctrine alone. It is possible that Justice Kavanaugh was alluding to a due process defense to liability for those who relied on the exception between 2015 and 2020. See *Trujillo v. Free Energy Savings Company, LLC*, No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, at *5 (C.D. Cal. Dec. 21, 2020) ("Nor does the plurality explain whether the contemplated liability shield arises from the enforceability of the statute as amended between 2015 and 2020, the unenforceability of the statute between 2015 and 2020, *or due process considerations left undiscussed*.") (emphasis added).

position."); *Cunningham*, 2021 WL 1226618, at *7 ("Accepting this argument would produce a result entirely predicated on whether a TCPA defendant called an individual to collect government debt, which would eviscerate the six-Justice holding that Congress 'impermissibly favored debt-collection speech over political and other speech[ ] in violation of the First Amendment.'"); see also *AAPC*, 140 S. Ct. at 2366 (Gorsuch, J., concurring in part) ("And a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate.) (emphasis in original).

This conundrum leaves lower courts with three options: 1) apply footnote twelve as written and accept the attendant problems with doing so; 2) accept the first portion and reject the second, as was done in *Cunningham* and *Creasy*; or 3) reject the first portion and accept the second.  The court agrees with the majority of other courts[7] that the third option is the soundest result.

---

[7]     See e.g., *Abramson v. Federal Insurance Company*, No. 8:19-cv-2523-T-60AAS, 2020 WL 7318953, at *2 (M.D. Fla. Dec. 11, 2020) ("Although [the defendant] cites two cases supporting its arguments, the vast majority of cases this Court has reviewed conclude that parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*."); *Franklin*, 2021 WL 1535575, at *3; *Rieker v. National Car Cure, LLC*, No. 3:20-CV-5901-TKW-HTC, 2021 WL 210841, at *1 (N.D. Fla. Jan. 5, 2021); *Trujillo*, 2020 WL 8184336, at *5 (collecting cases); *Buchanan v. Sullivan*, No. 8:20-CV-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020);  *Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020);  *Salerno v. Credit One Bank, N.A.*, No. 15-CV-516 (JLS), 2020 WL 4339219, at *3 (W.D.N.Y. Jul. 28, 2020).

Judge Bibas eloquently explained why in *Franklin*: "Congress's ideal version of the Act . . . never became law.  Instead, some fallback rule kicked in . . . To cure the content discrimination, either the exception was void . . . or the exception became the rule . . . The Act has a severability clause.  Thus, the *AAPC* plurality reasoned, Congress had picked the first rule."  *Franklin*, 2021 WL 1535575, at *3.  When Congress amended the TCPA to include the government-debt exception, it did so with a "fallback rule" in place.  Should a court rule that the exception created a constitutional problem, the fallback was to nix the exception and keep the blanket ban.  The defendants' argument–as well as the *Cunningham* and *Creasy* decisions–seems to suggest that this was not Congress's fallback rule.  This argument, however, is squarely contradictory to *AAPC*.

Furthermore, it does not address the *AAPC* plurality's invocation of the "*Frost*" framework for severing amendments to existing statutes.  "[A]n unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (quoting *Frost v. Corporation Commission of Oklahoma*, 278 U.S. 515, 526-27 (1929)).[8]  "Under the

---

[8]      "'Here it is conceded that the statute, before the amendment, was entirely valid.  When passed, it expressed the will of the legislature which enacted it.  Without an express repeal, a different legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent.'  The Court concluded that a corporation that had obtained a license under

reasoning adopted in *AAPC*'s severability analysis, the 2015 amendment was void *ab initio*, and the pre-amendment statute should be treated as *the* valid expression of legislative intent." *Trujillo*, 2020 WL 8184336, at *4 (citing *AAPC*, 140 S. Ct. at 2353)[9] (emphasis added).

"Severance is just ordinary statutory interpretation,"[10] something squarely within the judicial power.  There is nothing "quasi-legislative" about severability. *Cunningham*, 2021 WL 1226618, at *6.  While deciding severability questions, courts must be wary of "substitut[ing] the judicial for the legislative department of the government." *Ayotte*, 546 U.S. at 330.  Courts do so by adhering to legislative intent. See *Texas v. United States*, 945 F.3d 355, 394 (5th Cir. 2019), *reversed on other grounds*, *California v. Texas*, ___ U.S. ___, 141 S. Ct. 2104 (2021); *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 586 (2012) ("*NFIB*") ("Our 'touchstone for any decision about remedy is legislative intent, for a court cannot use its remedial powers to circumvent the intent of the legislature.'") (quoting *Ayotte*, 546 U.S. at 330).  When a court is deciding what, if anything, to sever, that court is deciding

---

the amended statute's exemption was 'without authority to do business' unless it obtained a permit by a showing of public necessity." *Trujillo*, 2020 WL 8184336, at *4 (quoting *Frost*, 278 U.S. at 526-27.).

[9]      In turn citing *Frost*, *Truax v. Corrigan*, 257 U.S. 312 (1921); *Eberle v. Michigan*, 232 U.S. 700 (1914); and *Jackson*, 390 U.S. 570.

[10]      *Franklin*, 2021 WL 1535575, at *2.

"what the law is,"[11] for courts "only possess 'the authority to interpret the law'—not 'the expertise [or] the prerogative to make policy judgments.'" *Cunningham*, 2021 WL 1226618, at *6 (quoting *NFIB*, 567 U.S. at 538).  In other words, severance doctrine is an available tool for the judiciary to "giv[e] effect to the will of the Legislature . . . to the will of the law." *Osborn v. Bank of the United States*, 22 U.S. 738, 866 (1824).

In *AAPC*, the court held that the *law* is Section 227(b)(1)(A)(iii) without the government-debt exception.  See *AAPC*, 140 S. Ct. at 2356.  Concluding that this interpretation of Section 227(b)(1)(A)(iii) applies retroactively to cover the defendants' alleged conduct is consistent with the constitutional powers of the federal courts, principles of statutory interpretation, and the mandatory authority of *AAPC* and *Frost*.  Thus, the court does have subject-matter jurisdiction to hear Cano's TCPA claims.

### 2. *Personal Jurisdiction*

AAG has not objected to this court's jurisdiction over it.  Only SunPath and Northcoast challenge personal jurisdiction.  Cano argues that AAG's contacts with Texas can be imputed to SunPath and Northcoast because AAG was acting on behalf of them as an agent.  *See* Response at 11.  Generally speaking, an agency relationship may establish minimum contacts over a principal.  See *In re Chinese-Manufactured*

---

[11]    *Marbury*, 5 U.S. at 177

*Drywall Products Liability Litigation*, 753 F.3d 521, 531-34 (5th Cir. 2014).  "As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."  *Daimler AG*, 571 U.S. at 135 n.13.  Whether AAG's contacts may be imputed to SunPath and Northcoast turns on the nature of the agency relationship.  See *In re Chinese-Manufactured Drywall*, 753 F.3d at 532.

The Federal Communications Commission ("FCC") has endorsed vicarious liability of principals for violations of the TCPA by their agents.  See *In re Dish Network, LLC*, 28 F.C.C. Record 6574, 6574 (2013).  A principal "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."  *Id*.

> To prove the existence of an agency relationship, the principal must have "both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." Alternately, apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is traceable to a manifestation of the principal.  Finally, a principal may be liable on the theory of ratification if it retains the benefits of a transaction after acquiring full knowledge of the underlying circumstances.

*Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020) (citations omitted).

This case mirrors the *Callier* case almost exactly.  Like *Callier*, the court "cannot reasonably infer an agency relationship from the mere fact that telemarketing calls were made on behalf of SunPath and Northcoast."  *Id*.  Also like *Callier*, "The

pleadings make clear: (1) SunPath and Northcoast are the beneficiaries of the marketing calls Plaintiff received, even if neither placed the calls directly; and (2) the telemarketer alleged to have violated the TCPA had the authority to sell Plaintiff a car warranty on their behalf." *Id*. at 4.  Thus, like *Callier*, Cano's allegations "suggest with reasonable particularity the possible existence of the requisite contacts." *Id*. (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)).

Faced with this predicament, and "sensitive to Plaintiff's limited ability to discern the identity of the telemarketing firm responsible for contacting him and the nature of its relationship with SunPath and Northcoast without discovery," the court ordered " limited jurisdictional discovery for the purpose of investigating whether this court has specific jurisdiction . . . ." *Id*.  Specifically, the court ordered the production of either the contracts or other related documents describing the relationship between SunPath and Northcoast and their purported agent.  See *id*. at 5.  This was particularly sound given the "fact-intensive" nature of the agency question.  See *Mohon v. Agentra LLC*, 400 F.Supp.3d 1189, 1240-41 (D.N.M. 2019); see also *Sosa v. Flincto, LLC*, No. 1:20-CV-232 WJ/LF, 2020 WL 3064929, at *2 (D.N.M. June 9, 2020) ("Accordingly, personal jurisdiction based on agency is a 'fact intensive question' that requires the Court to determine whether or not an agency relationship existed.  When an inquiry is fact intensive, as with personal jurisdiction, jurisdictional discovery may be warranted.") (internal citations omitted).

-24-

The court is thus inclined to follow Judge Montalvo's lead and order limited jurisdictional discovery. Though neither party has asked the court to do so, the court will, *sua sponte*, order limited discovery. Cf. *Lipson v. Birch*, 46 F.Supp.3d 206, 220 (E.D.N.Y. 2014) ("[T]he Court *sua sponte* declines to allow jurisdictional discovery on this issue."); see also 4A WRIGHT & MILLER, § 1067.6 (4th ed. April 2021 Update) ("It is well established that a federal district court has the power to require a defendant to respond to discovery requests relevant to his Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction."). This appears prudent since it is reversible error not to allow jurisdictional discovery where "there was a question as to whether jurisdiction could be established over a[] [non-resident] corporation through the employment of another as agent." *Wells Fargo & Company v. Wells Fargo Express Company*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (citing *Davis v. Asano Bussan Company*, 212 F.2d 558, 564-65 (5th Cir. 1954)). Thus, limited jurisdictional discovery is ordered in this case.[12]

### 3. *Rule 12(b)(6) Motions*

The court will defer consideration of the Rule 12(b)(6) motions until after jurisdictional discovery is completed and Cano has filed an amended complaint should he elect to do so.

---

[12]   Cano will be permitted to amend his complaint in order to incorporate the facts learned during jurisdictional discovery ordered by the court.

### III.  CONCLUSION

For the reasons stated above, the jurisdictional motions are **DENIED** and consideration of the Rule 12(b)(6) motions is **DEFERRED**.  It is **FURTHER ORDERED** that SunPath and Northcoast must produce to Cano contracts or agreements either defendant has with AAG to market their products or services or to initiate outbound sales calls to consumers on their behalf during the period Cano alleges he received sales calls.  Alternatively, SunPath and Northcoast must produce any documents describing either of their relationships with AAG and the process by which AAG may connect a customer to either SunPath or Northcoast.  It is **FURTHER ORDERED** that the parties shall jointly file a discovery status report within **45 days** of the date of this order.  It is **FURTHER ORDERED** that Cano shall file an amended complaint, should he elect to do so, within **45 days** of receipt of jurisdictional discovery materials.

**SO ORDERED.**

July 19, 2021

A. JOE FISH
**Senior United States District Judge**

-26-